**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VIROJ CHOMPUPONG and**
**MALINEE CHOMPUPONG,**

                                        **Plaintiffs,**

      **vs.**                                                        **1:17-cv-929**
                                                                     **(MAD/CFH)**

**CITY SCHENECTADY,**
**JACKSON DEMOLITION SERVICE, INC.,**
**SCHENECTADY METROPLEX**
**DEVELOPMENT AUTHORITY, JOHN**
**DOES 1-10 and XYZ CORP. 1-10,**

                                        **Defendants.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**TARTER KRINKSY & DROGIN LLP**              **ANTHONY D. DOUGHERTY, ESQ.**
1350 Broadway                                **LINDA S. ROTH, ESQ.**
New York, New York 10018
Attorneys for Plaintiffs

**WHITEMAN OSTERMAN & HANNA LLP**            **JOHN J. HENRY, ESQ.**
One Commerce Plaza                           **ALAN J. GOLDBERG, ESQ.**
Albany, New York 12260                       **GABRIELLA R. LEVINE, ESQ.**
Attorneys for Defendant Schenectady
Metroplex Development Authority

**MURPHY BURNS LLP**                          **JAMES J. BURN, ESQ.**
407 Albany Shaker Road
Loudonville, New York 12211
Attorneys for Defendant City of Schenectady

**O'TOOLE SCRIVO**                            **CASEY CHAMRA, ESQ.**
**FERNANDEZ WEINER VAN LIEU, LLC**           **ANTHONY CAPASSO, ESQ.**
14 Village Park Road                         **SEAN CALLAHAN, ESQ.**
Cedar Grove, New Jersey 07009
Attorneys for Defendant Schenectady
Metroplex Development Authority

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs Viroj and Malinee Chompupong commenced this action on August 22, 2017, asserting claims against the City of Schenectady (the "City"), Jackson Demolition Service, Inc. ("Jackson"), the Schenectady Metroplex Development Authority ("Metroplex"), and unnamed John Does and XYZ Corps. *See* Dkt. No. 1. The Chompupongs assert claims for due process and unlawful taking in violation of 42 U.S.C. § 1983 and conspiracy to do so against the City and Metroplex. Against the City, Plaintiffs assert claims for abuse of authority, trespass, negligence, and intentional destruction of property. They further assert violation of 42 U.S.C. § 1983, trespass, negligence, and intentional destruction of property against Jackson.

In March of 2018, all Defendants moved to dismiss the claims against them. However, the  Court entered an Order staying this case in light of the pending decision in *Knick v. Township of Scott*, 588 U.S. ___, 139 S. Ct. 2162 (2019), the disposition of which would govern certain issues currently before the Court. The Supreme Court published its opinion in that case on June 21, 2019, and in light of that decision, the stay in this matter is lifted.

For the reasons set forth below, the City's motion to dismiss is granted in part and denied in part; Metroplex's motion is granted in its entirety; and Jackson's motion to dismiss is granted in its entirety.

## II. BACKGROUND

Plaintiffs, the Chompupongs, are individuals and residents of the State of New York and were the owners of real property in Schenectady, referred to as the Nicholaus Building. *See* Dkt. No. 25 at ¶¶ 3-4. Defendant City of Schenectady, is a municipality in the State of New York. *Id.*

2

at ¶ 5.  Defendant Jackson Demolition Service, Inc. is a New York corporation.  *Id.* at ¶ 6.

Defendant Schenectady Metroplex Development Authority is a Schenectady County

governmental entity organized under New York law for the purpose of facilitating the economic

development of the City.  *Id.* at ¶ 7.  Metroplex is vested with limited powers such as to hold and

dispose of real property, issue bonds, loan and grant money, enter into contracts and leases, and

issue certain tax credits, among other related responsibilities.  *Id.* at ¶ 19.

The Chompupongs purchased the Nicholaus Building on February 3, 2004.  *Id.* at ¶ 13.

The ground floor of the Nicholaus Building was leased to commercial tenants while the three

apartments on the upper floors were leased to residential tenants.  *Id.* at ¶ 14.  The Amended

Complaint alleges that around March and April of 2016, the Nicholaus Building was severely

damaged as a result of construction work on or related to the Electric City Apartments

development project adjacent to the Nicholaus Building.  *Id.* at ¶ 15.  Because of this damage, on

April 1, 2016, the City issued an order to vacate the Nicholaus Building, which was accordingly

evacuated.  *Id.* at ¶ 16.  All work on the Electric City Apartments was contemporaneously halted.

*Id.* at ¶ 17.

After the Nicholaus Building was damaged, it was shored up and stabilized by the City

and Metroplex, with the assistance of various engineers and contractors.  *See id.* at ¶ 18.  Around

June 2016, the City, Metroplex, or a contractor for the Electric City Apartments hired engineering

firms to monitor the stability of the Nicholaus Building.  *Id.* at ¶¶ 22-26.  Plans were developed

for rehabilitation of the Nicholaus Building that estimated the cost of doing so at around $1

million.  *Id.* at ¶¶ 29-32.

On September 19, 2016, the owner of the Electric City Apartments property offered

$450,000 to the Chompupongs for the Nicholaus Building.  *Id.* at ¶ 37.  This offer was below

market price, and the Chompupongs preferred to pursue repair. *Id.* The City then directed a structural evaluation of the Nicholaus Building. *Id.* at ¶¶ 38-39.

Although the Chompupongs gave the inspector permission to enter, the Mayor of the City obtained a search warrant before entering the building on November 29, 2016. *Id.* at ¶ 40. The building was inspected on December 1, 2016, and nine "Unsafe Structure" code violations were issued, which called for corrective action by December 12, 2016. *Id.* at ¶ 43. Following a structural evaluation by the engineering firms on December 5, 2016, a report was issued on December 21, 2016, which recommended "that immediate action be taken to stabilize the building foundations and repair the noted structural deficiencies," and that "[i]n the event that [the] building cannot be stabilized immediately, the structure should be demolished to prevent further de-stabilization of the structure and potential failure." *Id.* at ¶ 45. The City did not share the engineer's December 21, 2016 report with the Chompupongs or their representatives, and took no action with respect to the report. *See id.* at ¶ 46.

On February 2, 2017, Viroj Chompupong appeared in Schenectady Municipal Court and pleaded not guilty to the building code violations filed by the City against the Nicholaus Building. *Id.* at ¶ 47. On February 14, 2017, in accordance with a discovery schedule stipulated to by counsel, Viroj Chompupong provided the City with an engineering report prepared by Lakeside Engineering, which concluded that the Nicholaus Building "does not pose an imminent danger" and had been "properly temporarily stabilized." *Id.* at ¶ 48. On February 28, 2017, Viroj Chompupong's counsel requested an adjournment of the March 1, 2017 omnibus motions due to deficiencies in the City's discovery production. *Id.* at ¶ 49. The hearing motions date was adjourned to April 5, 2017. *Id.* at ¶ 50. Viroj Chompupong and counsel failed to appear for the April 5, 2017 omnibus motion hearing and filed a motion to dismiss the violations "in the interest

of justice," which was received by the court on April 6, 2017. *Id.* at ¶¶ 65-67. On Friday, April 7, 2017, at approximately 2:00 p.m., counsel for the Chompupongs was notified by telephone that the Nicholaus Building had shifted by less than half an inch, was allegedly in danger of collapse, and, based on the City's police authority, would be demolished immediately. *Id.* at ¶ 68.

The Chompupongs strongly objected to the demolition of the Nicholaus Building and made an emergency application to the Honorable Thomas Buchanan of the Supreme Court of the State of New York, County of Schenectady, to stay the demolition. *Id.* at ¶ 69. Justice Buchanan denied the request for a stay, and Jackson proceeded to demolish the Nicholaus Building. *Id.* at ¶¶ 73-74. On July 6, 2017, construction on the Electric City Apartments resumed. *Id.* at ¶ 75.

### III. DISCUSSION

**A.    Standard of Review[1]**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v.*

---

[1] The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as for a motion to dismiss under Rule 12(b)(6). *See Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009).

*Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

Here, Jackson argues that the Chompupongs have failed to sufficiently allege conduct on the part of Jackson that may be regarded as state action. Indeed, Jackson correctly argues that the actions of "private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982). The Chompupongs fail to put forward adequate justification for why their constitutional claims should lie against a private actor.

**B.      Defendant Jackson**

*1. Color of State Law*

6

In its motion to dismiss, Jackson contends that the claims brought under 42 U.S.C. § 1983 against it must be dismissed because Plaintiffs fail to plead facts plausibly alleging that it acted under color of state law.  *See* Dkt. No. 35-3 at 9.  Jackson argues that it did not evaluate the Nicholaus Building's condition and did not decide that it should be demolished.  *See id.* at 10. Rather, Jackson contends that it was simply the successful bidder for the City's demolition work at issue, which is insufficient to support a finding that it acted under color of state law.  *See id.*  In response, Plaintiffs argue that the allegations in the Amended Complaint satisfy the "joint action/close nexus test in determining whether a private entity may be held liable under Section 1983.  *See* Dkt. No. 47 at 14.

Generally, the U.S. Constitution regulates only governmental conduct, not the conduct of private parties.  *See Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005). Therefore, a litigant claiming that his constitutional rights have been violated by a private entity must demonstrate that the defendant was acting under the color of law.  *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012).  The conduct of a private entity can be attributed to the state if in the following circumstances:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Prog., Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001)).

Plaintiffs contend that the second of these tests apply to the present matter.  *See* Dkt. No. 47 at 14-17.  "Pursuant to the 'close nexus' or 'joint action' test, 'the Court must determine whether there is a sufficiently close nexus between the State and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the State itself.'"  *Lynch v. Southampton Animal Shelter Found. Inc.*, 971 F. Supp. 2d 340, 351 (E.D.N.Y. 2013) (quoting *Blum*, 457 U.S. at 1004, 102 S. Ct. 2777) (other quotation omitted).  In other words, "a private actor can be found 'to act under color of state law for 1983 purposes ... if the private party is a willful participant in joint action with the State or its agents.'"  *Anilao v. Spota*, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980)).

"'To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law.'"  *Lynch*, 971 F. Supp. 2d at 351 (quotation omitted).  "A nexus of 'state action' exists between a private entity and the state when 'the state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies.'"  *Flagg v. Yonkers Sav. and Loan Ass'n, FA*, 396 F.3d 178, 187 (2d Cir. 2005) (quotation omitted).

In the present matter, Plaintiffs point to the following language in the Amended Complaint in support of their position:

82.     Upon information and belief, on or about April 7, 2017 the City entered into a contract with Jackson for the demolition of the

Nicholaus Building and issued Jackson a permit for the demolition
of the Nicholaus Building.

83.    The City, acting on its own accord and/or in conspiracy with
Metroplex solicited and accepted a bid from Jackson even though it
knew that: (i) Jackson had performed demolition work in
connection with the Electric City Apartments project; (ii) Jackson
was a named defendant in a pending state court action brought by
the Chompupongs against Metroplex and others seeking
compensation for damages sustained by the Nicholaus Building
because of the Electric City Apartments project; (iii) the
Chompupongs had alleged that Jackson's negligence and/or other
defalcations had caused and/or contributed to the damage sustained
by the Nicholaus Building; and (iv) demolition of the Nicholaus
Building would result in the spoliation of obviously important
evidence in the state court action.

84.    On April 7, 2017 under the cover of darkness and on the
days immediately thereafter, the City (in conspiracy with
Metroplex) and Jackson demolished the Chompupongs' property
and a part of Schenectady's history.

Dkt. No. 47 at 13 (quoting Dkt. No. 25 at ¶¶ 82-84).  Further, Plaintiffs contend that, "[a]cting as

an agent for the city and under color of state law, Jackson has engaged in a course of conduct,

namely the demolition of the Nicholaus Building, which has deprived Plaintiffs of due process of

law and which has effectuated a taking of the Nicholaus Building without the payment of just

compensation, all in violation of the Fourth, Fifth and Fourteenth Amendments to the United

States Constitution and actionable under 42 U.S.C. § 1983."  Dkt. No. 25 at ¶ 117.

In support of their position, Plaintiffs rely primarily on *Verdi v. City of Philadelphia*, 553

F. Supp. 334 (E.D. Pa. 1982).  In *Verdi*, the plaintiff landowner sued the City of Philadelphia and

Liberty (a private demolition corporation) under § 1983 for violating his due process rights under

the Fifth and Fourteenth Amendments by demolishing his parent's property without notice.  *See*

*id.* at 336.  Liberty argued that it did not act under color of state law and could not be liable for

constitutional violations under § 1983 because it did not exercise any decision-making power and

was simply following the City's instructions.  *See id.*  The court held, applying *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982), that even though Liberty was following the City's policies, it was still a joint participant in seizing the plaintiff's property.  *See id.* at 337.  As a result, the plaintiff was considered a state actor and could be liable for violations of the plaintiff's due process rights under the Fourteenth Amendment.  *See id.*

As Jackson correctly notes, the district court in *Verdi* disregarded a critical limitation in the *Lugar* opinion.  In *Lugar*, a creditor sought prejudgment attachment of a debtor's property and filed an *ex parte* petition which resulted in the property being attached.  The Supreme Court found that the private actor's actions were state action, but specifically limited its holding to the particular facts of the case: to "the particular context of prejudgment attachment" based on the *ex parte* application of one party.  *Lugar*, 457 U.S. at 939 n.21.  Further, and more importantly, the Court stated explicitly that "we do not hold today that 'a private party's mere invocation of state legal procedures constitutes "joint participation" or "conspiracy" with state officials.'"  *Id.* (quotation omitted).

More recently, in a factually similar case, the district court rejected the decision in *Verdi*. In *Sershen v. Cholish*, No. 3:07-cv-1011, 2008 WL 598111 (M.D. Pa. Feb. 29, 2008), the plaintiff brought suit alleging constitutional and common law claims against multiple local officials and a demolition company, after a home she owned but no longer occupied was declared unsafe and demolished without her knowledge or consent.  *See id.* at *1.  The demolition company moved to dismiss on the basis that it was not acting under color of state law when, acting pursuant to a contract awarded by the government, it demolished the plaintiff's property.  *See id.*  In dismissing the demolition company from the case, the district court specifically addressed the limited circumstances in which the holding in *Lugar* applies and specifically rejected the outcome in

*Verdi.* Specifically, the district court held that the demolition company was not acting under color of state law because the plaintiff failed to allege that the company was "draped with the power of the state or that its judgment was substituted for the municipality's[.]" *Id.* at *7; *see also Stacey v. City of Hermitage*, No. 2:02-cv-1911, 2009 WL 689458, *8 (W.D. Pa. Mar. 11, 2009) (finding that the demolition company was not acting under color of state law when it demolished the plaintiff's home through a contract with the city); *Win & Son, Inc. v. City of Philadelphia*, 162 F. Supp. 3d 449 (E.D. Pa. 2016) (finding that the fact that a private contractor, a demolition company, "performed the [demolition] work under the government's control, did so at the City's request, and received government funds does not make it a state actor" when "[t]he record show[ed] that [the contractor] was not permitted to perform any discretionary government functions" and "[i]ts actions were limited to fulfilling the terms of its contract with the government").

In the present matter, the Court finds that Plaintiffs have failed to plausibly allege that Jackson was acting under color of state law. As the Supreme Court has held, "[a]cts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982). The non-conclusory facts in the Amended Complaint make clear that the City made the decision to demolish the Nicholaus Building and that Jackson was merely the contractor who submitted the lowest bid. The Amended Complaint does not allege that Jackson made the decision to declare the building imminently dangerous or exercise any judgment in determining when it was necessary to demolish the building. Rather, the allegations make clear that its actions were limited to fulfilling the terms of its contract with the government. Such facts do not support the conclusion that Jackson was acting under color of state law. *See Munoz v. City of Union City*,

481 Fed. Appx. 754, 761 (3d Cir. 2012) (holding that a private demolition contractor was not a state actor, despite carrying out the demolition pursuant to a contract with the city government); *Dale E. Frankfurth, D.D.S. v. City of Detroit*, 829 F.2d 38, *5 (6th Cir. 1987) (dismissing the defendant All-Rite Wrecking Company because its demolition of the building at issue while working under contract from the City was not an action taken under color of state law); *Horton v. USA Environmental Mgmt., Inc.*, No. 13-cv-3352, 2013 WL 5377284, *4-*5 (E.D. Pa. Sept. 24, 2013) (holding that private demolition company was not acting under color of state law when it demolished a building under a contract with the government).

Finally, the Court notes that the Amended Complaint does not contend that Jackson was conspiring with the City in demolishing the Nicholaus Building.  Although the Amended Complaint does allege that a conspiracy existed between the City and Metroplex, Jackson is not included in that cause of action.  *See* Dkt. No. 25 at ¶¶ 95-100.  Since Jackson is not alleged to be a member of the conspiracy between the City and Metroplex, the conspiracy allegations provide no basis for the Court to find that Jackson was acting under color of state law.

Based on the foregoing, the Court grants Jackson's motion to dismiss as to the sixth cause of action.

### 2. Supplemental Jurisdiction

In its motion to dismiss, Jackson raises two distinct arguments as to why the Court should decline to exercise supplemental jurisdiction over the state law claims brought against it.  *See* Dkt. No. 35-3 at 20-22.  The Court will addressed each in turn.

### a. 28 U.S.C. § 1367(c)(3)

Jackson argues that the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) because "should this Court dismiss Plaintiffs' § 1983 claim against

Jackson, there will be no federal question left for this Court to decide." *Id.* at 20.  While Jackson is correct that this Court has dismissed the federal claim asserted against it, Jackson is not entitled to dismissal of the state law claims under Section 1367(c)(3).  Courts have consistently found that Section 1367(c)(3) is inapplicable so long as the Court continues to have original jurisdiction over a federal claim brought against any of the named defendants.  *See Virgil v. Darlak*, No. 10-cv-6479, 2013 WL 4015368, *7 n.3 (W.D.N.Y. Aug. 6, 2013) ("Although the federal claim against Darlak is dismissed, this Court continues to have original jurisdiction over the federal claim asserted against Keith; accordingly, 28 U.S.C. § 1367(c)(3) is not applicable, and the Court will continue to exercise jurisdiction over the state law claims against Darlak and Exigence") (citation omitted); *Soba v. New York City Hous. Auth.*, No. 11 Civ. 7430, 2013 WL 3455449, *7 n.10 (S.D.N.Y. July 9, 2013) (citation omitted).  As discussed below, the motion seeking dismissal of the federal claims brought against the City is being denied.  As such, Section 1367(c)(3) is inapplicable.

### b. 28 U.S.C. § 1367(c)(4)

As to Jackson's second argument for dismissal of the state law claims, Jackson argues that the Court should decline to exercise supplemental jurisdiction pursuant to Section 1367(c)(4), which permits the Court to decline exercising supplemental jurisdiction in exceptional circumstances, providing compelling reasons for declining jurisdiction.  *See* Dkt. No. 35-3 at 21-22.  Jackson contends that, prior to bringing this action, Plaintiffs commenced a lawsuit in Schenectady County Supreme Court.  *See id.* at 22.  According to Jackson, "[i]n identical fashion to the action before this Court, Plaintiffs' State Court Action asserts claims of intentional and/or reckless conduct and negligence relating to the Nicholaus Building's destabilization and subsequent demolition." *Id.* (citing Exh. No. 1 at ¶¶ 51-55, 60).  Jackson contends that the State

Court Action seeks damages for the cost of demolition, and also the cost to replace the Nicholaus Building.  *See id.*  Jackson argues that Plaintiffs' duplicative supplemental claims before this Court could give rise to conflicting determinations within a complex multi-party dispute and that dismissal is warranted to promote the efficient adjudication of the remaining causes of action. *See id.*

In response, Plaintiffs contend that while the State Court Action and the instant action both relate to the Nicholaus Building, the lawsuits are, in fact, distinct.  *See* Dkt. No. 47 at 28. According to Plaintiffs, "[t]he State Court Action asserts claims for negligence and intentional/reckless conduct against Highbridge/Prime Development, Inc. (the developer of the Electric City Apartments), Plank, LLC (the general contractor), C2 Design Architects (the project architect) as well as several of their subcontractors including Jackson for damage that was sustained by the Nicholaus Building as a result of demolition, excavation and construction work on the Electric City Apartments and the failure to adequately protect the building as the Chompupongs had been promised."  *Id.* Plaintiffs argue that the State Court Action does not include any claims by against the City.  *See id.*  Further, Plaintiffs note that the direct claims against Metroplex in the State Court Action were dismissed, but that it remains in the case by virtue of cross claims.  *See id.*  In this case, Plaintiffs note that the assert claims against the City, Metroplex, and Jackson for civil rights violations, abuse of power, trespass, negligence and intentional destruction of property related to the demolition of the Nicholaus Building a year after it was first damaged.  *See id.*  Plaintiffs further claim that they "seek to recover damages from the respective defendants only for the injuries caused by the wrongful conduct alleged in each action. Jackson faces liability in the State Court Action based on its conduct demolishing the Olender Building and performing other site prep work in connection with the Electric City Apartments

project.  Jackson faces liability in the present matter based on its separate conduct in demolishing the Nicholaus Building."  *Id.*  As such, Plaintiffs argue that there is no chance of "'conflicting determinations' if this Court retains supplemental jurisdiction[.]"  *Id.*

Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if

>   (1) the claim raises a novel or complex issue of State law,
>
>   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>   (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
>   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Second Circuit has stated that where "at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values ... [of] economy, convenience, fairness, and comity."  *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004); *accord Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446 (2d Cir. 1998) (quotation omitted).  Applying this principle, the Court must determine (1) whether there are "exceptional circumstances" and "compelling reasons" within the meaning of Section 1367(c)(4) to decline jurisdiction over Plaintiffs' state law claims; and (2) whether declining jurisdiction will accommodate the values of "economy, convenience, fairness, and comity."

The Second Circuit has indicated that Section 1367(c)(4) should be applied narrowly because in using the term, "exceptional circumstances," "'Congress has sounded a note of caution that the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)-(3) only if the circumstances are quite unusual.'"  *Itar-Tass Russian News*

*Agency*, 140 F.3d at 448 (quoting *Executive Software*, 24 F.3d at 1558).  As such, "federal courts 'must ensure that the reasons identified as "compelling" are not deployed in circumstances that threaten this principle.'"  *Id.* (quotation omitted).

When evaluating judicial economy, "[c]ourts consider their familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation."  *Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013) (citation omitted).  "In weighing convenience, courts ask whether the case is easily resolvable, and, if it is, whether it is more appropriate to resolve the case than decline to exercise jurisdiction."  *Id.* (citation omitted).  "Fairness involves questions of equity: Will declining jurisdiction prejudice the parties, and are the parties responsible for any such prejudice?"  *Id.* (citing *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994)).  "Comity 'tak[es] into account such factors as ... the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims.'"  *Id.* (quoting *City of Chicago*, 522 U.S. at 173, 118 S. Ct. 523).

In the present matter, the Court finds that the factors weigh in favor of declining to exercise supplemental jurisdiction over Plaintiffs' state law claims against Jackson.  Judicial economy favors declining jurisdiction.  The ongoing State Court Action was commenced approximately one year prior to this action.  This action was stayed on March 14, 2019 while the Court was awaiting the Supreme Court's decision in *Knick v. Township of Scott*, 588 U.S. ___, 139 S. Ct. 2162 (2019).  While discovery has begun in the present matter, between the age of the case and the stay in the present matter, it is clear that the State Court Action is further advanced.

Plaintiffs claim that this action and the State Court Action are distinct in that the State Court Action's claims relate to the damage done to the Nicholaus Building as a result of the

demolition, excavation and construction work on the Electric City Apartments and the failure to adequately protect the building, while this action seeks redress for the demolition of the Nicholaus Building a year after it was first damaged.  A review of the Amended Complaint in this action and the Third Amended Verified Complaint in the State Court Action reveal that the relief Plaintiffs seek against Jackson in both actions is the same.  In the State Court Action, Plaintiffs assert claims of intentional and/or reckless conduct and negligence, while here they assert claims of trespass, negligence, and intentional destruction of property against Jackson.  *See* Dkt. No. 35-2 at 12-17; Dkt. No. 25 at ¶¶ 120-31.  In the State Court Action, Plaintiffs seek to recover the following in damages: "$3,000,000 for property damage, lost income, diminution in the market value of the Nicholaus Building, replacement of the Nicholaus Building and/or pain and suffering."  Dkt. No. 35-2 at 13.  Additionally, Plaintiffs seek "to recoup any amount they may be charged by the City of Schenectady for demolition, which amount has been reported to be $168,000."  *Id.*  If Plaintiffs were to be successful in both actions against Jackson, there is considerable risk of receiving duplicative damages.

Moreover, as Plaintiffs' April 3, 2018 letter to the Court demonstrates, the discovery that they have sought from Jackson in the present matter is substantially the same as what has been sought in the State Court Action.  *See* Dkt. No. 40 at 1-2 (identifying sixteen (16) types of documents and categories of documents that have been requested in both actions but not yet produced).  Additionally favoring a finding of exceptional circumstances is the fact that Jackson is not the cause of the parallel proceedings.  Plaintiffs commenced both of these actions and Jackson's inclusion in this matter was entirely unnecessary.  *See Metro Found. Contractors, Inc. v. Arch Ins. Inc.*, 498 Fed. Appx. 98, 102-03 (2d Cir. 2012).  This conclusion is supported by the fact that, after the Nicholaus Building was demolished, Plaintiffs' amended the complaint in the

State Court Action to account for this new development, seeking damages for the replacement of the building and any costs charged to them by the City for the demolition. *See* Dkt. No. 35-2.

Based on the foregoing, the Court finds that exceptional circumstances and compelling reasons exist to decline to exercise supplemental jurisdiction of the state law claims brought against Jackson. Declining jurisdiction will accommodate the values of judicial economy, convenience, fairness, and comity. *See Jones*, 358 F.3d at 214.

### C.    42 U.S.C. § 1983 - Constitutional Taking

Section 1983 provides plaintiffs with a cause of action against government officials who, acting under the color of government authority, have subjected a plaintiff to "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001). Section 1983 is "not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979)). To establish a section 1983 claim, a plaintiff must demonstrate two elements: "(1) 'the act complained of was committed by a person acting under color of state law'; and (2) 'this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Greenwich Citizens Comm. v. Counties of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 29-30 (2d Cir. 1996) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

To state a takings claim under section 1983, a plaintiff must show "(1) a property interest (2) that has been taken under color of state law (3) without just compensation." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 452 (S.D.N.Y. 1998) (citing *HBP Assoc. v. Marsh*, 893 F. Supp.

271, 277 (S.D.N.Y. 1995)).  Before the Supreme Court's recent decision in *Township of Scott*, the law in the Second Circuit had been that "a 'taking' is not 'without just compensation' under section 1983 unless a plaintiff has exhausted all state remedies that may provide just compensation."  *Id.* (citing *Williamson Cty. v. Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985)); *see also Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir. 1995) ("Compensation must first be sought from the state if adequate procedures are available") (citation omitted), *cert. denied*, 519 U.S. 808 (1996).  It would therefore have been relevant that "New York has established a procedure for pursuing just compensation, EDPL 101 *et seq*. . . . ." *Frooks*, 997 F. Supp. at 453 (citing *HBP Assoc.*, 893 F. Supp. at 277); *see also Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 514 (2d Cir. 2014) ("'It is well-settled that New York State has a reasonable, certain and adequate provision for obtaining compensation'") (quoting *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 157 (E.D.N.Y. 2006)).  The claim would have failed for ripeness.

However, the Supreme Court in *Township of Scott*, upon reconsideration of *Williamson County*, from which this rule emanated, overruled this state-exhaustion requirement as "an unjustifiable burden on takings plaintiffs . . . ." *Township of Scott*, 139 S. Ct. at 2167-68..  It is now the case that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id.* at 2167.  While this does not require that the government furnish such just compensation as required by the Fifth Amendment in advance of a taking, it does allow a property owner who has suffered such a taking without just compensation to "bring his claim in federal court under § 1983 at that time." *Id.* at 2168.  This means that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Id.* at 2170.  "If a local

government takes private property without paying for it, that government has violated the Fifth Amendment—just as the Takings Clause says—without regard to subsequent state court proceedings." *Id.* "The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.* at 7.

In light of this clear change in the law, because Plaintiffs have alleged that the City demolished their property under color of state law and without just compensation, Plaintiffs' takings claim may proceed.

**D.    Conspiracy**

"'To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Benitez v. Ham*, No. 9:04-CV-1159, 2009 WL 3486379, *18 (N.D.N.Y. Oct. 21, 2009) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right.  *See Malsh v. Austin,* 901 F. Supp. 757, 763-64 (S.D.N.Y. 1995) (citation omitted).  Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights.  *See id.*; *see also Friends of Falun Gong v. Pacific Cultural Enterprise, Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003) (citations omitted); *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (citation omitted).

To withstand a motion to dismiss, the conspiracy claim must contain more than "'conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights[.]'" *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (quotation omitted); *Shabazz v. Pico*, 994 F. Supp. 460, 467 (S.D.N.Y. 1998) (holding that a mere allegation of conspiracy with

20

no facts to support it cannot withstand a motion to dismiss).  Specifically, the plaintiff must provide some factual basis supporting a "meeting of the minds," such as that the defendants "entered into an agreement, express or tacit, to achieve the unlawful end[;]" the plaintiff must also provide "some 'details of time and place and the alleged effects of the conspiracy.'" *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir .1993)).

Plaintiffs have proffered only vague and conclusory allegations of conspiracy.  There is no basis in the pleadings for an inference of some "agreement, express or tacit, to achieve the unlawful end." *See Warren*, 33 F. Supp. 2d at 177.  Plaintiffs have offered routine business correspondence regarding the procedure of condemnation as purported evidence of a clandestine scheme to deprive them of property.  But the Court finds that these factual allegations, even taken in the light most favorable to Plaintiffs, simply fail to support a reasonable inference of a conspiracy.  Plaintiffs allege that some combination of these business emails and the fact that certain engineers and surveyors may have been hired by the City or by Metroplex indicates conspiracy.  However, Plaintiffs have suggested no plausible motive, have offered no evidence beyond bare allegation of any express or tacit agreement, and have not provided any factual basis from which the Court can plausibly infer conspiracy on the part of Defendants.

Accordingly, the Court grants the City's and Metroplex's motions to dismiss as to the conspiracy claim.[2]

**E.     Due Process**

---

[2] The Court notes that, in Plaintiffs' response to Metroplex's motion to dismiss, they concede that they "have not attempted to state a direct claim against Metroplex[.]"  Dkt. No. 48 at 6 n.1.  Having found the conspiracy claim to be inadequately pled, Metroplex is dismissed from this action.

The Chompupongs also assert due process claims under the Fourteenth Amendment.  It is unclear to the Court whether these claims are of substantive or procedural nature, or both.  The Court addresses these due process claims in turn.

### 1. Substantive Due Process

"The substantive component of the Due Process Clause bars 'certain government actions regardless of the fairness of the procedures used to implement them.'"  *Wantanabe Realty Corp. v. City of New York*, 315 F. Supp. 2d 375, 392 (S.D.N.Y. 2003) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  "Its 'touchstone . . . is protection of the individual against arbitrary action by the government,' not only by procedural unfairness, but by 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective.'"  *Id.* (quoting *Wolf v. McDonnell*, 418 U.S. 539, 558 (1974)) (other citation omitted).  However, "the scope of substantive due process is not boundless.  Rather it is limited to conduct that shocks the conscience and violates the decencies of civilized conduct."  *Id.* (quotation marks omitted).

In *Albright v. Oliver*, 510 U.S. 226 (1994), the Supreme Court held that where "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."  *Id*. at 274.  Here, there is an "explicit textual source of constitutional protection" upon which the Chompupongs may, and in fact do, rely.  The Fifth Amendment expressly protects against takings of property for public use without just compensation.  And here, the Chompupongs "allege that defendants acted unreasonably in condemning and authorizing the demolition" of the Nicholaus Building.  The claims regarding its demolition in this case are, therefore, appropriately pursued under the Takings Clause.

Based on the foregoing, the Court grants the City's motion to dismiss as to the substantive due process cause of action.

### 2. Procedural Due Process

In considering procedural due process claims, a court must determine "(1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest." *Kshel Rrealty Corp. v. City of New York*, 293 Fed. Appx. 13, 14 (2d Cir. 2008) (citing *Sealed v. Sealed*, 332 F.3d 51, 55 (2d Cir. 2003)). "[I]n certain circumstances, the lack of such predeprivation process will not offend the constitutional guarantee of due process, provided there is sufficient postdeprivation process." *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 538 (1981)). "'[E]ither the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Id.* (quoting *Parratt*, 451 U.S. at 539).

"Fourteenth Amendment procedural due process generally requires a pre-deprivation hearing before property rights can be terminated." *DeBari*, 9 F. Supp. 2d at 162 (citation omitted). "It has long been recognized, however, that authorized agents may proceed without providing pre-deprivation hearings when an emergency situation necessitates quick action or makes it impracticable to provide a meaningful hearing, so long as the State provides 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" *Id.* (quoting *Cantanzaro*, 140 F.3d at 94) (other quotation omitted).

Here, despite the Supreme Court's opinion in *Township of Scott*, the Chompupongs still have post-deprivation procedure available. There is established procedure for seeking just

compensation under New York law.  Furthermore, they now have this forum and a recognized cause of action that may now be asserted before this Court to provide remedy for precisely this alleged taking.  This procedural due process claim is thus entirely duplicative of their takings claim, and cannot stand separate and apart from that claim.  *See Levantino v. Skala*, 56 F. Supp. 3d 191, 203 (E.D.N.Y. 2014) (collecting cases where procedural due process claims were dismissed for being predicated upon the same factual bases and were therefore duplicative).

Based on the foregoing, the Court dismisses Plaintiffs' procedural due process claim.

**F.      Fourth Amendment**

Plaintiffs' claim under the Fourth Amendment is predicated on the same factual allegations as their claim under the Takings Clause.  However, the applicable legal theory is distinct.  The Supreme Court has found that where the government, "acting under color of state law, dispossessed the [plaintiffs] of their trailer home by physically tearing it from its foundation and towing it to another lot," these facts were sufficient to constitute a seizure within the meaning of the Fourth Amendment.  *See Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 72 (1992); *see also DeBari v. Town of Middleton*, 9 F. Supp. 2d 156, 161 (N.D.N.Y. 1998) (holding demolition of building constituted Fourth Amendment seizure) (collecting cases).

Plaintiffs argue the point that makes this claim distinct.  They allege, in the alternative, that the demolition of their property was not done for public use.  As discussed above, where a property is taken for a public use, a government must provide just compensation to not run afoul of the Takings Clause.  Were the demolition found to be for a purpose other than a public one, the Takings Clause no longer governs and the question that remains is whether such a "seizure" of property was "reasonable" under the Fourth Amendment.  Although perhaps an uncommon application of the Fourth Amendment, the Supreme Court has recognized that the Fourth

Amendment's protections extend beyond the law enforcement context.  *See Soldal*, 506 U.S. at 68.  Such a claim will be subject to a "reasonableness determination that will reflect a 'careful balancing of governmental and private interests.'" *Id*. (quoting *New Jersey v. T.L.O.*, 469 U.S. 326, 341 (1985)).

Here, Plaintiffs allege that the City demolished and dispossessed them of the Nicholaus Building under color of state law in an unreasonable manner.  Therefore, this claim under the Fourth Amendment must survive the motion to dismiss.

Based on the foregoing, the Court denies the City's motion to dismiss as to Plaintiffs' Fourth Amendment claim.

## G.    Supplemental Jurisdiction Over State Law Claims Against the City

The City's argument that the Court should decline to exercise supplemental jurisdiction is predicated on the assumption that the federal claims would be dismissed under *Williamson County*.  As that is not the case, and the City  has not provided alternative grounds for dismissal of the state law claims, the City's motion to dismiss the state law claims is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the City of Schenectady's motion to dismiss (Dkt. No. 39) is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that the Schenectady Metroplex Development Authority's motion to dismiss (Dkt. No. 38) is **GRANTED**, and Schenectady Metroplex Development Authority is **DISMISSED** as a party to this action; and the Court further

**ORDERS** that Jackson Demolition Service, Inc.'s motion to dismiss (Dkt. No. 35) is

**GRANTED**, and Jackson Demolition Service, Inc. is **DISMISSED** as a party to this action; and

the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  July 24, 2019
        Albany, New York

Mae A. D'Agostino
U.S. District Judge