UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VIROJ CHOMPUPONG and
MALINEE CHOMPUPONG,

                      Plaintiffs,

   vs.                                        1:17-cv-929
                                                      (MAD/CFH)

CITY SCHENECTADY,
JOHN DOES 1-10 and XYZ CORP. 1-10,

                      Defendants.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**TARTER KRINKSY & DROGIN LLP**        **ANTHONY D. DOUGHERTY, ESQ.**
1350 Broadway                                 **LINDA S. ROTH, ESQ.**
New York, New York 10018
Attorneys for Plaintiffs

**MURPHY BURNS LLP**                         **JAMES J. BURN, ESQ.**
407 Albany Shaker Road
Loudonville, New York 12211
Attorneys for Defendant City of Schenectady

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiffs Viroj and Malinee Chompupong commenced this action on August 22, 2017, asserting claims against the City of Schenectady (the "City"), Jackson Demolition Service, Inc. ("Jackson"), the Schenectady Metroplex Development Authority ("Metroplex"), and unnamed John Does and XYZ Corps. *See* Dkt. No. 1. The Chompupongs asserted claims for due process and unlawful taking in violation of 42 U.S.C. § 1983 and conspiracy to do so against the City and Metroplex. Plaintiffs further asserted claims against the City for abuse of authority, trespass,

negligence, and intentional destruction of property. Finally, the Chompupongs alleged a violation of 42 U.S.C. § 1983, trespass, negligence, and intentional destruction of property against Jackson.

In March of 2019, Defendants each filed separate motions to dismiss for failure to state a claim. Dkt. Nos. 35, 38 & 39. On July 24, 2019, the Court issued a Memorandum-Decision and Order granting in part and denying in part the City's motion to dismiss, and granting in their entirety Metroplex's and Jackson's motions to dismiss. Dkt. No. 58.

On July 27, 2020, the City moved for summary judgment on Plaintiffs' remaining claims. Dkt. No. 79. For the reasons set forth below, the City's motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiffs, the Chompupongs, are individuals and residents of the State of New York and were the owners of real property in Schenectady, referred to as the Nicholaus Building. *See* Dkt. No. 79-2 at ¶ 1. Defendant City of Schenectady, is a State of New York municipality. *Id*. at ¶ 2.

The Chompupongs purchased the Nicholaus Building on February 3, 2004. *Id.* at ¶ 3. The ground floor of the Nicholaus Building was leased to commercial tenants while the three apartments on the upper floors were leased to residential tenants. *Id.* On April 1, 2016, the Nicholaus Building was damaged as a result of construction work on or related to the Electric City Apartments development project adjacent to the Nicholaus Building. *Id.* at ¶ 4. Because of this damage, on April 1, 2016, the City issued an order to vacate the Nicholaus Building, which was accordingly evacuated. *Id.* at ¶¶ 5-7.

After the Nicholaus Building was damaged, it was shored up and stabilized by the City and Metroplex, with the assistance of various engineers and contractors. *See id.* at ¶ 19. Around

June 2016, an entity, but not the City, hired Ausfeld & Waldruff Surveyor, LLC ("A&W") to provide survey monitoring and measurements for the Nicholaus Building. *Id.* at ¶ 20.

Although the Chompupongs gave the inspector permission to enter, the Mayor of the City obtained a search warrant before entering the building on November 29, 2016. *Id.* at ¶ 23. The building was inspected on December 1, 2016, and nine "Unsafe Structure" code violations were issued, which called for corrective action by December 12, 2016. *Id.* at ¶ 24. Following a structural evaluation by M.J. Engineering and Land Surveying, P.C. ("M.J. Engineering") on December 6, 2016, a report was issued on December 21, 2016, which recommended "that immediate action be taken to stabilize the building foundations and repair the noted structural deficiencies," and that "[i]n the event that [the] building cannot be stabilized immediately, the structure should be demolished to prevent further de-stabilization of the structure and potential failure." *Id.* at ¶ 27.

On March 6, 2014, A&W took additional monitoring points that had been monitored on the northeast and west faces of the Nicholaus Building in June 2016. *Id.* at ¶ 31. Christopher Dooley, P.E. received the survey monitoring data complied by A&W on March 7, 2017. *Id.* at ¶ 32. Mr. Dooley then spoke with A&W for further clarification. *Id.* at ¶ 33. M.J. Engineering then prepared another report on March 20, 2017, to discuss the findings and his professional recommendations based the surveying monitoring data, which was sent to Carl Falatico, Corporation Counsel of the City. *Id.* at ¶ 34.

M.J. Engineering concluded that the Nicholaus Building shifted and displaced to the west. *Id.* at ¶ 36. M.J. Engineering stated that the Nicholaus Building should immediately be permanently stabilized or, if not, demolished. *Id.* at ¶ 37. The Letter Report of M.J. Engineering was signed by Mr. Dooley, a licensed professional engineer in the State of Vermont. *Id.*

3

On March 29, 2017, Mr. Dooley received additional monitoring data taken on that day from A&W, which revealed no additional movement since the previous recording. *Id.* at ¶ 39. On April 7, 2017, Mr. Dooley met with Robert Gach, an attorney representing Metroplex, Schenectady Fire Chief Senecal, and Corporation Counsel Falotico. *Id.* at ¶ 40. Mr. Dooley stated at the meeting that due to the lack of permanent stabilization, the Nicholaus Building was an immediate threat to collapse and that M.J. Engineering would not recommend waiting any amount of time to address the threat. *Id.* at ¶ 44. Mr. Dooley then prepared a Structural Assessment Letter that same day reiterating these assessments and emailed it to Mr. Falatico. *Id.*

The City's Acting Building inspector, Dominick Viscariello, reviewed the Structural Assessment Letter from Mr. Dooley that afternoon. *Id.* at ¶ 45. Mr. Viscariello authorized the demolition of the Nicholaus Building pursuant to City Code § 138-30(f), which grants the Building Instructor authority to order the demolition of a building that poses an imminent danger to human life or health. *Id.* at ¶¶ 45-47.

Mr. Viscariello then prepared a Notice of Violation stating that the Nicholaus Building was unsafe and needed to be demolished and affixed the Notice to the door of the Nicholaus Building, as well as a Notice of Violation to the owner of the Nicholaus Building, which was also affixed to the door of the building stating that the building was unsafe due to major structural failures and needed to be demolished immediately. *Id.* at ¶ 48.

Counsel for the Chompupongs was notified that afternoon by telephone that the Nicholaus Building had shifted by less than half an inch, was allegedly in danger of collapse, and, based on the City's police authority, would be demolished immediately. *Id.* at ¶ 49.

The Chompupongs strongly objected to the demolition of the Nicholaus Building and made an emergency application to the Honorable Thomas Buchanan of the Supreme Court of the

4

State of New York, County of Schenectady, to stay the demolition. *Id.* at ¶ 50. Justice Buchanan denied the request for a stay, and Jackson proceeded to demolish the Nicholaus Building. *Id.* at ¶¶ 51-52.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252 (emphasis and alterations in original)). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B.      Fourth Amendment Illegal Seizure**

The City asserts that it is entitled to summary judgment on Plaintiffs' Fourth Amendment claims because emergency circumstances existed which made the demolition of the Nicholaus Building reasonable. Dkt. No. 79-16 at 3-4. The Court disagrees.

"The Fourth Amendment, made applicable to the States by the Fourteenth ... provides in pertinent part that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Soldal v. Cook Cty., Ill*., 506 U.S. 56, 61 (1992) (internal citation and quotation marks omitted). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The removal of one's home is undoubtably a seizure under the Fourth Amendment and therefore must be reasonable. *See Soldal*, 506 U.S. at 61-62; *see also DeBari v. Town of Middleton*, 9 F. Supp. 2d 156, 161 (N.D.N.Y. 1998) ("Where, as here, the government demolishes a building, a 'seizure' results within the meaning of the Fourth Amendment").

"[E]mergency demolition of a private citizen's property implicates procedural due process considerations under the Fifth and Fourteenth Amendments." *Smith v. City of Albany*, No. 1:03-CV-1157, 2006 WL 839525, *10 (N.D.N.Y. Mar. 27, 2006). Where the defendant raises issues of emergency circumstances requiring demolition of a property, "the legality of defendants' conduct ... turns on its reasonableness and the existence of an alleged emergency." *Id*. (citing *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61-61 (1992)) (other citation omitted).

"Though the test of reasonableness 'is not capable of precise definition or mechanical application,' ... it generally requires a 'careful balancing of government and private interests.'" *DeBari*, 9 F. Supp. 2d at 163 (quoting *Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Soldal*, 506 U.S. at 71) (other citation omitted). Whether emergency circumstances existed is often a question for the jury. *See Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1983); *Heidorf v. Town of Northumberland*, 985 F. Supp. 250, 259 (N.D.N.Y. 1997). Thus, the question of reasonableness based on emergency circumstances is generally one more properly left for the jury. *DeBari*, 9 F. Supp. 2d at 163 (quoting *Catanzaro v. Weiden*, 140 F.3d 91, 94 (2d Cir. 1998)) (other citations omitted). However, where a plaintiff fails to present evidence sufficient to rebut the defendant's evidence of emergency circumstances, summary judgment is appropriate. *See Smith*, 2006 WL 839525, at *15.

The City asserts that there is no issue of material fact that emergency circumstances existed and that, therefore, the immediate demolition of the Nicholaus Building was reasonable. Dkt. No. 79-16 at 2-4. In December 2016, engineer Christopher Dooley inspected the Nicholaus Building and recommended stabilization or, if not possible, demolition. Dkt. No. 79-3 at ¶ 10; Dkt. No. 79-6 at 2-3. The City did not seek demolition after receiving the report. In February 2017, Plaintiffs provided the City with a report prepared by Lakeside Engineering stating that

7

"[t]he building does not pose an imminent danger since it is a condemned structure and has been properly temporarily stabilized." Dkt. No. 82-20 at 24.

On March 6, 2017, three months after Mr. Dooley's inspection, A&W survey data showed that the left wall of the Nicholaus building had moved about half an inch. Dkt. No. 82-23 at 1. Mr. Dooley received the data on March 7, 2017. Dkt. No. 79-3 at ¶ 13. On March 20, 2017, Mr. Dooley again recommended that the Nicholaus Building be immediately stabilized or demolished. Dkt. No. 82-26 at 2. Mr. Dooley also recommended that the building continue to be monitored on a monthly basis. *Id*. at 2.

Eighteen days later, on April 7, 2017, the City sought clarification from Mr. Dooley to determine "if it is safe to wait 7-10 days to address the stability of the Building given the continued movement." Dkt. No. 79-9 at 2. In response, Mr. Dooley stated that he "would not recommend waiting any given amount of time to address the condition of the building. *Id*. Acting building inspector Dominick Viscariello then made the decision pursuant to City Code § 138-30(f) to immediately demolish the Nicholaus Building. Dkt. No. 79-10 at ¶¶ 11-13.

The parties do not dispute the time line as presented. However, it is hotly contested whether an emergency actually existed. The City relies on *Smith* and asserts that because Plaintiffs have failed to submit admissible expert testimony that the Nicholaus Building was not an immediate threat to public safety summary judgement must be granted. Dkt. No. 86 at 1. In *Smith*, all parties agreed that the "[d]efendants' decision to demolish plaintiff's building was a 'quick determination.'" *Smith*, 2006 WL 839525, at *11. "Despite the 'quick' nature of the decision-making in this case, all public officials involved were in 'consensus' regarding the proposed demolition." *Id*. The building was demolished the next day. *Id*. at *14. The defendants

8

there submitted two expert opinions demonstrating the need for demolition, on which they based their decision to demolish the building. *Id*. at *12.

Unlike *Smith*, the City did not act swiftly in its decision to demolish the building. Despite Mr. Dooley's recommendations, the City did not move forward for over a week. Also significant, Mr. Dooley's recommendations were based on data collected over a month prior to the City's decision to demolish the Nicholaus building. Dkt. No. 82-23 at 1.

While Mr. Dooley's April 7, 2017 report clarified the earlier report from March 20, 2017, his report on March 20, 2017 similarly stated the Nicholaus Building should be "stabilized immediately" or demolished. Dkt. No. 82-26 at 2. However, on April 7, 2017, Mr. Dooley clarified that, despite recommending that the building be monitored on a monthly basis, that the building was in danger of collapsing immediately. Dkt. No. 79-9 at 1. Thus, on March 20, 2017, the City was aware that immediate action was necessary to stabilize the building but possibly unaware that the building would collapse until April 7, 2017.

City Code § 138-30 requires the City to give notice to the building owner of defects rendering a building unsafe. Dkt. No. 79-13 at 2-3; City Code § 138-30(c). The City Code allows the City to forgo the notice requirement where there is an emergency. Dkt. No. 79-13 at 2-3; City Code § 138-30(f). It is apparent that the City's duty to provide Plaintiffs with notice of the defects arose on March 20, 2017, when Mr. Dooley called for immediate stabilization of the property. Dkt. No. 82-26 at 2. The City then chose to sit on its obligation for eighteen days until they determined whether an emergency existed.

The City now seeks to have Mr. Dooley's April 7, 2017 report retroactively establish that the Nicholaus Building was in danger of immediately collapsing since March 6, 2017 when it shifted about half of an inch. The City does not clarify why it failed to act swiftly to confirm the

9

existence of emergency circumstances following the March 20, 2017 report, and why it took them eighteen days to ask Mr. Dooley if the Nicholaus Building could stand for another seven-to-ten days. This delay on behalf of the City is sufficient to create a genuine issue of material fact as to whether the demolition of the Nicholaus building without adequate notice to Plaintiffs and a pre-deprivation hearing was reasonable.

Accordingly, the Court denies the City's motion for summary judgment as to Plaintiffs' Fourth Amendment illegal seizure claim.

C.     **Fifth Amendment**

The City asserts that it is entitled to summary judgment on Plaintiffs' Fifth Amendment claims because emergency circumstances rendered the demolition of the Nicholaus Building a reasonable use of its police powers. Dkt. No. 79-16 at 3-4. The Court disagrees.

"'In the exercise of its police powers [a] municipality may demolish a building without providing notice and an opportunity to be heard if there are exigent circumstances which require immediate demolition of the building to protect the public from imminent danger.'" *Iavarone v. City of New York*, 129 A.D.3d 776, 777 (2d Dep't 2015) (quoting *One Monroe, LLC v. City of New York*, 89 A.D.3d 812, 813 (2d Dep't 2011)) (alterations in original).

> [W]here there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion.

*Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999). An emergency exists and "[a] town may exercise its emergency police power only where there is a 'dire necessity' to act and where 'its action is reasonably calculated to alleviate or prevent the crisis condition.'" *Scott v. Town of*

10

*Duanesburg*, 176 A.D.2d 989, 991 (3d Dep't 1991) (quoting *Belle Harbor Realty Corp. v. Kerr*, 35 N.Y.2d 507, 512 (1974)).

"Under *Hodel*, the due process guarantee is offended only when an emergency procedure is invoked in an abusive and arbitrary manner; therefore, there is no constitutional violation unless the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion." *Catanzaro*, 188 F.3d at 62 (citing *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 302–03 (1981)). "Whether the official abused his discretion or acted arbitrarily in concluding that a genuine emergency exists is a factual issue, subject to the usual considerations for a district court addressing a summary judgment motion." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 51 (2d Cir. 2009). "Summary judgment may not be awarded where there is a genuine issue of fact as to whether officials acted arbitrarily in declaring an emergency." *Id*.

"A municipal demolition of an imminently dangerous structure in order to protect the public is an exercise of the police power and does not constitute a 'taking.'" *Wantanabe Realty Corp. v. City of New York*, 315 F. Supp. 2d 375, 401 (S.D.N.Y. 2003) (citations omitted). However, to warrant summary judgment it must be clear that "the [b]uilding posed an imminent danger" and not just that it was in a state of despair. *Libbey v. Vill. of Atl. Beach*, 982 F. Supp. 2d 185, 211 (E.D.N.Y. 2013). A delay on behalf of the municipality to act to use its police powers in an emergency situation may create an issue of material fact that circumstances were not imminent and, therefore, that the government officials acted arbitrarily. *WWBITV*, 589 F.3d at 51 (citing *Burtnieks*, 716 F.2d at 984) ("In *Burtnieks*, the existence of a three-month delay between when the city declared an emergency and when it demolished Burtniek's building gave rise to a genuine issue as to whether the defendants acted arbitrarily in proclaiming a need to protect the public by

11

condemning the structure without providing its owner a pre-deprivation opportunity to be heard"); *see also Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 228 (E.D.N.Y. 2014) ("The existence of a significant delay between recognition of a supposed emergency and the act to remedy that condition could, *inter alia*, support a reasonable finding that the Town officials acted arbitrarily in declaring the conditions on the Property to be an immediate danger to the public"); *Scott*, 176 A.D.2d at 991 ("Moreover, the fact that over two weeks elapsed from the date of the engineering report to defendant's June 8, 1989 meeting in and of itself defeats the claim that there was insufficient time to give plaintiff reasonable notice and an opportunity to be heard").

Plaintiffs have failed to rebut the City's expert opinion with expert evidence that the building was not in imminent danger of collapsing. Rather, Plaintiffs highlight that the City had all the evidence they used to determine that the Nicholaus Building was in danger of collapsing for a month before ordering its demolition and, therefore, the demolition of the Nicholaus Building was an improper use of the City's police powers. *See* Dkt. No. 81-4 at 11. The Court agrees.

The City acted immediately after declaring an emergency, but did so with information in its possession for weeks. *See* Dkt. No. 82-26 at 2. While Mr. Dooley's April 7, 2017 report clarified the earlier report from March 20, 2017, his report on March 20, 2017 similarly stated that the Nicholaus Building should be "stabilized immediately" or demolished. *Id*. However, on April 7, 2017, Mr. Dooley clarified that, despite recommending that the building be monitored on a monthly basis, that the building was in danger of collapsing immediately. Dkt. No. 79-9 at 1. Once the City was informed that the Nicholaus Building was in danger of collapsing immediately, the City ordered its demolition. Dkt. No. 79-10 at 11-13. Thus, on March 20, 2017, the City was

aware that immediate action was necessary to stabilize the building but possibly unaware that the building would collapse until April 7, 2017.

As the noted above, the City's duty to provide the Plaintiffs with notice of the defects of the Nicholaus Building arose on March 20, 2017, when Mr. Dooley called for immediate stabilization of the property. Dkt. No. 79-13 at 2-3; City Code § 138-30(c); Dkt. No. 82-26 at 2. The City then delayed for eighteen days until they determined whether an emergency existed. By doing so, a jury could reasonably conclude that the City abused its discretion or acted arbitrarily and similarly by failing to give Plaintiffs a pre-deprivation hearing when they waited eighteen days to ask Mr. Dooley if the building could stand for seven more. The City does not address in their motion for summary judgment why they waited to inform Plaintiffs, knowing that emergency circumstances were looming.

In *Scott*, the defendant waited two weeks to follow up on the engineer's report, which only concluded that the plaintiff's building was in "'limited' danger of collaps[ing]." *Scott*, 176 A.D.2d at 991. The Third Department stated that the two week delay was sufficient time to give the plaintiff notice prior to demolition of the property. *Id.* Here, the City waited eighteen days and were told the building was in need of immediate stabilization. As the Second Circuit articulated in *Burtneik*, "it is difficult to discern how [the municipality's] interest would have been compromised or diminished by granting appellant a hearing prior to the demolition." *Burtnieks*, 716 F.2d at 987.

Accordingly, there exists is a question of material fact as to whether the City acted arbitrarily or abused its discretion and therefore summary judgment on Plaintiffs' Fifth Amendment claim is denied.

**D.     *Monell* Claim**

The City asserts that it is entitled to summary judgment on Plaintiffs' *Monell* claims because, by failing to present an official policy or name a policy maker, Plaintiffs have failed to adequately plead a *Monell* claim. Dkt. No. 79-16 at 6-8. The Court agrees.

"'[T]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quotation omitted). "'[A] municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*,' ... but rather the plaintiff must 'demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury.'" *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quotations omitted). "Although 'official policy' often refers to formal rules or customs that intentionally establish 'fixed plans of action' over a period of time, when a municipality 'chooses a course of action tailored to a particular situation,' this may also 'represent[ ] an act of official government 'policy' as that term is commonly understood.'" *Montero v. City of Yonkers*, 890 F.3d 386, 403 (2d Cir. 2018) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004)) (alteration in original).

"Under *Monell*, '[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Id*. (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)) (alterations in original). Where a party does not assert "that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified but rather that they were taken or caused by an official whose actions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved." *Jeffes v. Barnes*,

14

208 F.3d 49, 57 (2d Cir. 2000). "It does not suffice for these purposes that the official has been granted discretion in the performance of his duties." *Id*. "'[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability.'" *Id*. (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)) (alterations in original).

The City asserts that Plaintiffs have failed to adequately plead a *Monell* claim by failing to present an official policy or name a policy maker as required by *Monell*. Dkt. No. 79-16 at 6-8. Plaintiffs rely on *Pembaur* in support of their assertion that a *Monell* claim is properly asserted where a plaintiff demonstrates a single improperly made decision that is an act of governmental policy. Dkt. No. 81-4 at 14-15. Plaintiffs' reliance is misplaced.

The two page long passage Plaintiffs quote in their brief refers to municipal liability for actions made by a "policymaker" or an "authorized decisionmaker." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Plaintiffs' quote stops short of the true test for municipal liability based on a single decision. The Supreme Court continued to say, "[h]aving said this much, we hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id*. at 481; *see also Agosto v. New York City Dep't of Educ*., ___ F.3d ___, 2020 WL 7086060, *7 (2d Cir. Dec. 4, 2020) ("The Supreme Court has said that a municipality may be liable for the acts of a single official—but only if that official is someone 'whose edicts or acts may fairly be said to represent official policy' for the entire municipality").

Further, "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability

15

based on an exercise of that discretion." *Pembaur,* 475 U.S. at 481–82. Despite highlighting that Mr. Viscariello was authorized to make the decision to demolish the Nicholaus Building, Plaintiffs do not assert that Mr. Viscariello is a policymaker. Dkt. No. 81-4 at 14-15. As stated in *Pembaur*, this is insufficient to establish that Mr. Viscariello's decision may impose liability on the City.

Second, Plaintiffs do not assert any government policy which resulted in the demolition of the Nicholaus Building–aside from City Code § 138-30(f). *See id.* Such a failure is insufficient to demonstrate a claim under *Monell*. *See Seedan Real Estate Holding, LLC v. Leary*, No. 3:16-CV-00595, 2018 WL 6830707, *12-13 (N.D.N.Y. Dec. 28, 2018) (holding that the plaintiff failed to allege a government policy as required by *Monell* where the plaintiff merely presented the authorizing statute); *see also Kimble v. Kingston City Sch. Dist.*, 792 Fed. Appx. 80, 82 (2d Cir. 2019) ("However, it is settled Second Circuit law that, to prevail under a *Monell* theory of municipal liability, plaintiffs must do more than 'merely assert[ ]' the existence of a municipal policy or custom leading to a rights violation") (alteration in original).

Plaintiffs have failed to present any evidence demonstrating a constitutional violation resulting from a government policy or from a decision by a policymaker. Therefore, the City's motion for summary judgment on Plaintiffs' *Monell* claims are granted.[1]

**E.     State Law Claims**

Finally, the City moves for summary judgment on Plaintiffs' four state law claims: abuse of authority, trespass, negligence, and intentional destruction of property. Dkt. No. 79-16 at 10.

---

[1] The City asserts that, should the Court determine that Mr. Viscariello is a policy maker, qualified immunity would apply. Dkt. No. 79-16 at 8-10. As Plaintiffs note, Mr. Viscariello is not a named defendant. Dkt. No. 81-4 at 15-16. Regardless, as the Court has granted summary judgment regarding Plaintiffs' *Monell* claims, it will not address the City's qualified immunity argument.

The City asserts that the demolition of the Nicholaus building was a reasonable exercise of its police powers under City Code § 130-38(f) and because they are entitled to government function immunity. *Id.* at 11-12. The Court disagrees. Having already determined that there is an issue of material fact as to whether an emergency existed, summary judgment on Plaintiffs' state law claims based on the police powers theory must be denied. The Court will therefore only examine the City's governmental immunity argument.

"Although [New York] long ago waived sovereign immunity on behalf of itself and its municipal subdivisions, the common-law doctrine of governmental immunity continues to shield public entities from liability for discretionary actions taken during the performance of governmental functions." *Valdez v. City of New York*, 18 N.Y.3d 69, 75–76 (2011). "This limitation on liability reflects separation of powers principles and is intended to ensure that public servants are free to exercise their decision-making authority without interference from the courts." *Id*. at 76. "[A] state or municipal defendant engaging in a governmental function can avoid liability if it timely raises the defense and proves that the alleged negligent act or omission involved the exercise of discretionary authority." *Id*.

While municipalities "are absolutely immune from suit for judicial and quasi-judicial discretionary acts involving the conscious exercise of discretion ..., discretionary acts that do not 'requir[e] the application of governing rules to particular facts, an exercise of reasoned judgment which could typically produce different acceptable results,' do not receive absolute immunity." *Scott*, 176 A.D.2d at 991–92 (internal citation and quotation omitted) (alterations in original). "The decision to demolish without giving notice and an opportunity to be heard cannot be classified as a discretionary decision as fundamental due process compels the result ... removing discretion." *Id*. at 992 (holding that a two week delay in following up on the engineer's report was

17

sufficient to demonstrate that the city had time to provide notice and therefore governmental immunity did not apply) (citations omitted).

Plaintiffs rely on *Scott* for their assertion that governmental immunity does not apply in this case. Dkt. No. 81-4 at 17. The City asserts that *Scott* is inapplicable because in *Scott* "[t]he May 24, 1989 engineering report, based on a May 2, 1989 inspection, indicated that the residence was in 'limited' danger of collapse." *Scott*, 176 A.D.2d at 991. Unlike the report in *Scott*, Mr. Dooley's April 7, 2017 report made clear that, "the Nicholaus Building was ... a threat to collapse immediately." Dkt. No. 79-9 at 1. Mr. Dooley recommended immediate action to "address the condition of the building." *Id.*

It is clear from Mr. Dooley's report that by April 7, 2017 immediate action was necessary. As in *Scott*, here, City Code § 130-38(f) required notice to Plaintiffs of the structural defects. Dkt. No. 79-13 at 2-3; City Code § 130-38(c). The City's duty to provide Plaintiffs with notice of the defects of the Nicholaus Building arose on March 20, 2017, when Mr. Dooley called for immediate stabilization of the property. Dkt. No. 79-13 at 2-3; City Code § 138-30(c); Dkt. No. 82-26 at 2. Like *Scott*, the City's delay in following up on the engineer's report demonstrates sufficient time to provide notice. There was clearly time for a hearing and, like *Scott*, "[t]he decision to demolish without giving notice and an opportunity to be heard cannot be classified as a discretionary decision as fundamental due process compels the result ... removing discretion." *Scott*, 176 A.D.2d at 992. Thus, governmental immunity does not apply. *Id.*

Accordingly, the Court denies the City's motion for summary judgment based on governmental immunity.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the City of Schenectady's motion for summary judgment (Dkt. No. 79) is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 18, 2020
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge